IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LOWELL BAISDEN, MICHAEL KONING and ANESTHESIA CONSULTANTS OF NEBRASKA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> RON BOURNE, BURT McKEAG, ANDREW CHANTOS, BOB McCHESNEY and DOES 1-10, <br><br> Defendants. | 8:06CV517 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on defendants Ron Bourne, Burt McKeag, Andrew Chontos, and Bob McChesney's (collectively, "defendants") motions to dismiss, Filing Nos. 5, 11. This is an action about alleged RICO violations, Consumer Protection Act violations, and claims of tortious interference with a business relationship, as it relates an exclusive contract to provide anesthesia services at a hospital. Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States, and 28 U.S.C. § 1367, permitting this court supplemental jurisdiction over claims related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

**Background**

In 2002, plaintiff Anesthesia Consultants of Nebraska, Inc. ("ACN"), a Nebraska corporation, entered into a contract with Great Plains Regional Medical Center ("Great Plains"), located in North Platte, Nebraska. According to the contract, ACN received

exclusive right to provide anesthesia services at Great Plains for a three-year period beginning on July 7, 2002.  The contract further provided for a successive three-year renewal term unless either party provided sufficient notice of intent not to renew.  Through plaintiff Dr. Michael Koning ("Koning"), ACN's sole shareholder and president, ACN hired defendant Burt McKeag ("McKeag"), an anesthesiologist, and Ron Bourne ("Bourne"), a certified registered nurse anesthetist, to perform anesthesia and related services at Great Plains.  Defendant Andrew Chontos ("Chontos"), a licensed medical practitioner, practiced medicine in North Platte, Nebraska.[1]

At the heart of plaintiffs' complaint is their allegation that defendants "conceived and executed a scheme, plan, fraud, and artifice with the design and specific intent of enticing [Great Plains] into terminating its contract with ACN[.]"  Filing No. 9, ¶ 14.  Plaintiffs maintain that defendants conducted this scheme by utilizing interstate commerce, airport and common carrier facilities, as well as the U.S. mail, telephone, wireless, and Internet facilities.  *Id.*, ¶ 26.  According to plaintiffs, defendants did so to obtain the exclusive anesthesiology contract from Great Plains, thereby depriving Koning of his means of livelihood.  Further, plaintiffs allege defendants conducted this scheme by improving their position, stature, and reputations within the North Platte community.

Plaintiffs allege that Koning's brother-in-law, Lowell Baisden ("Baisden"), a certified public accountant and resident of the state of California, frequently traveled to Nebraska to provide tax, accounting, and other financial services for medical professionals.  As part of the alleged scheme, plaintiffs maintain that defendants targeted Baisden and his

---

[1]Plaintiffs do not allege that Chontos practiced medicine for ACN.  The court does not assume that because Chontos practiced in North Platte, he practiced medicine for ACN.

tax/accounting work in the North Platte area. Specifically, defendants purportedly accused Baisden of giving unlawful tax advice to his clients, and attempted to entice Baisden's clients to terminate their relationship with Baisden and hire defendant Bob McChesney ("McChesney"), a CPA in North Platte.

Plaintiffs further maintain that Chontos contacted an Internal Revenue Service ("IRS") criminal investigator in 2003. Chontos allegedly reported that Baisden and Koning engaged in unlawful tax and accounting practices. According to plaintiffs, Chontos made these allegations with the intent of harming ACN, Koning, and Baisden. Additionally, Chontos purportedly told Great Plains employees he was angry ACN had the exclusive contract with Great Plains and that Koning was highly compensated. Chontos reportedly told "third parties" that he was determined to see that Koning and ACN lost their contract with Great Plains and that he desired "to see [Koning] go to jail." Filing No. 9, ¶ 17.

In the fall of 2003, Chontos allegedly sent a letter via the U.S. Postal Service to various physicians at Great Plains. In this letter, Chontos reportedly made various derogatory comments about Koning and ACN in an attempt to persuade Great Plains to terminate its contract with ACN. Furthermore, Chontos allegedly included in this letter false statements about Koning's ability to practice medicine and accused Koning of engaging in illegal activity. Plaintiffs maintain that Chontos deposited this letter in the U.S. mail knowing his allegations about Koning and ACN were false.

Plaintiffs allege that in June 2004, McKeag contacted the IRS and reported that Koning and Baisden were engaging in unlawful tax and accounting practices. Bourne purportedly contacted the IRS in the fall of 2004 and reported the same information. Plaintiffs allege that McKeag and Bourne made these allegations with the intent to harm

ACN, Koning, and Baisden.  On January 28, 2005, McChesney sent a letter to Dr. Michael Trierweiler and other physicians at North Platte OB/GYN, P.C.  In this letter, McChesney reportedly accused Baisden of engaging in illegal tax evasion schemes.  According to plaintiffs, McChesney sent letters attempting to entice Baisden's clients to terminate their relationship with Baisden and hire McChesney instead.  Plaintiffs maintain McChesney knew his allegations were false when he deposited these letters in the U.S. mail.  Additionally, in the spring of 2006, one or more of the defendants allegedly contacted the Montana Board of Medical Examiners and made false statements about Koning in an attempt to prevent Koning from receiving his medical license in the state of Montana.

Plaintiffs allege that defendants conducted these activities in a continuing enterprise, and acted in concert and conspiracy to commit fraud, engage in unfair business competition, and conduct the operation of Great Plains in an unlawful and fraudulent manner.  Filing No. 9, ¶ 25.  Plaintiffs further allege that such activities constitute the existence of an enterprise, and that defendants used the proceeds of their enterprise to acquire and finance other enterprises in furtherance of their unlawful objectives.  According to plaintiffs, the internal management and relationship between the defendants constituted an enterprise organization for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Plaintiffs claim that defendants used or invested wrongfully obtained proceeds in the acquisition of an interest involved in interstate or foreign commerce.  Filing No. 9, ¶ 27. Plaintiffs allege that defendants' purported activities constitute a pattern of racketeering activity designed to receive income, derived directly or indirectly, with each defendant participating as a principal according to 18 U.S.C. § 2 (2006).  Plaintiffs maintain that

defendants' alleged racketeering activity was an attempt to acquire or maintain "an interest in or control of the anesthesiology enterprises and/or tax and accounting enterprises[,]" which are purported to affect interstate or foreign commerce.  Filing No. 9, ¶ 29.  Such activities, plaintiffs maintain, are violative of RICO, 18 U.S.C. § 1962 (2006), and as a result of defendants' purported interference, Great Plains terminated its contract with ACN before the expiration of the initial three-year term.  Filing No. 9, ¶ 35.

Plaintiffs brought suit in the District Court of Lincoln County, Nebraska, alleging seven causes of action: Claim I, tortious interference with a business relationship or expectancy (by plaintiff ACN against all defendants); Claim II, breach of duty of loyalty by employees (by plaintiff ACN against defendants Bourne, McKeag, and Does 1-10); Claim III, civil racketeering (RICO) (all plaintiffs against all defendants); Claim IV, tortious interference with a business relationship of expectancy (by plaintiff Baisden against defendants Bourne, McChesney, and McKeag); Claim V, a violation of the Consumer Protection Act (by all plaintiffs against all defendants); Claim VI, unjust enrichment (by all plaintiffs against all defendants); and Claim VII, civil conspiracy (by all plaintiffs against all defendants).  Plaintiffs filed a similar complaint, alleging the same seven causes of action, in federal court on June 6, 2006.  Civil Docket Case No.: 8:06-cv-00419, Filing No. 1.  Thereafter, defendants removed the state court action to this court, and filed a motion to consolidate the federal cases.  Civil Docket Case No.: 8:06-cv-00517, Filing No. 1; Filing No. 4.

Plaintiffs submitted a notice of dismissal of the case filed in federal court, 8:06-cv-00419, and the court subsequently dismissed the case without prejudice.  Civil Docket Case No.: 8:06-cv-00419, Filing No. 18.  Accordingly, Magistrate Judge Thalken

denied as moot defendants' motion to consolidate. Civil Docket Case No.: 8:06-cv-00517, Filing No. 8. Plaintiffs subsequently amended their complaint alleging seven causes of action: Claim I, tortious interference with a business relationship or expectancy (by plaintiff ACN against all defendants); Claim II, breach of duty of loyalty by employees (by plaintiff ACN against defendants Bourne, McKeag, and Does 1 through 10); Claim III, civil racketeering (RICO) (by all plaintiffs against all defendants); Claim IV, tortious interference with a business relationship or expectancy (by plaintiff Baisden against all defendants); Claim V, a violation of the Consumer Protection Act (by all plaintiffs against all defendants); Claim VI, unjust enrichment (by all plaintiffs against all defendants); and Claim VII, civil conspiracy (by all plaintiffs against all defendants). Plaintiffs request that this court award monetary damages, exemplary damages, punitive damages, cost and attorney fees, and any other relief the court deems appropriate.

In response to plaintiffs' claims, defendant Bourne filed an answer and counterclaim against plaintiffs Koning and ACN. Filing No. 16. In his counterclaim, Bourne maintains that ACN paid him by the minute for operating room anesthesia time and by the hour for obstetric labor epidural procedures. Bourne alleges that ACN paid him only for "billable anesthesia time." As such, Bourne contends that he was not compensated for time spent at the hospital between procedures, and for writing reports and handling other paperwork. Bourne claims that for the last three years, he worked more than forty hours a week for ACN, but was not paid time and a half for the overtime hours he worked. Bourne claims that because ACN paid him by the minute, rather than on a salary or fee basis, he was not exempt under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Further,

Bourne alleges that Koning and ACN failed to maintain accurate records regarding the amount of time Bourne worked.

Incident to this litigation is the ongoing case of *United States of America v. Lowell Baisden*, filed in the United States District Court for the Eastern District of California Fresno Division. Filing No. 29, Attachment 1. Plaintiffs filed a motion to stay the current action pending resolution of the California case, and Magistrate Judge Thalken subsequently denied plaintiffs' motion. Filing Nos. 29, 38.

Defendants initially filed a motion to dismiss plaintiffs' case, arguing that pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Koning lacks standing to sue under RICO; plaintiffs have not pled that Bourne, McKeag, Chontos, or McChesney engaged in the "conduct" required to state a RICO claim against them; plaintiffs have not pled the existence of a distinct "enterprise" as required by RICO; plaintiffs have not pled a "pattern" of racketeering activity by Bourne, McKeag, Chontos, and McChesney as required by RICO; and plaintiffs have not pled that Bourne, McKeag, Chontos, and McChesney engaged in any "racketeering activity" giving rise to a cause of action under RICO § 1964(c). Filing No. 5. Defendants further argued that plaintiffs' remaining claims are grounded in state law, and with dismissal of plaintiffs' RICO claim, the remaining claims should be dismissed because this court lacks jurisdiction. *Id.* After plaintiffs amended their complaint, defendants filed a similar motion to dismiss, alleging the same claims for dismissing plaintiffs' RICO claim. Filing No. 11.

Plaintiffs filed a brief in opposition to defendants' motion to dismiss, Filing No. 17, arguing that Koning has standing to assert a RICO claim. Additionally, plaintiffs argue that they have properly pleaded the existence of an enterprise, as well as mail and wire fraud

predicate acts of racketeering. Plaintiffs further contend that defendants do not challenge plaintiffs state law claims, that defendants' counterclaim raises a federal question, and this court should exercise supplemental jurisdiction over the state law claims. Plaintiffs request that if this court finds plaintiffs have not properly pleaded their RICO claim, that this court grant plaintiffs leave to cure any deficiencies.

Defendants responded with a reply brief in support of their motion to dismiss. Filing No. 18. Defendants argue that plaintiffs' claims amount to claims of defamation, and that defamation does not constitute a predicate act. Further, defendants maintain that plaintiffs fail to allege facts sufficient to sustain mail or wire fraud. Defendants contend that they do not amount to an enterprise and a pattern of racketeering activity does not exist. Additionally, defendants note that federal courts may not assert jurisdiction solely on a counterclaim, and the remaining claims do not justify the court's exercise of supplemental jurisdiction.

**Legal Standards**

    **A.**    **Federal Rule of Civil Procedure 12(b)(6)**

In reviewing a complaint on a Rule 12(b)(6) motion, the court must consider all of the facts alleged in the complaint as true, and construe the pleadings in a light most favorable to the plaintiff. *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005). A dismissal is not granted lightly. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). When accepting the facts of the complaint as true, a court will not "blindly accept the legal conclusions drawn by the pleader

from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Therefore, a dismissal under Rule 12(b)(6) is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief," *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999), such as a missing allegation about an element necessary to obtain relief or an affirmative defense or other bar. *See generally Doe v. Hartz*, 134 F.3d 1339, 1341 (8th Cir. 1998).

### B.   Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) demands that "the circumstances constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) is strictly construed as it applies to fraud and mistake and nothing else. *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997). The particularity requirement of Rule 9(b) requires a higher degree of notice than the notice required for other claims, regardless of whether applicable state or federal law requires a higher standard of proving fraud. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003); *see Roberts v. Francis*, 128 F.3d 647, 650-51 (8th Cir. 1997). Rule 9(b) is designed to enable the defendant to respond to the potentially damaging allegations in a specific and quick manner. *United States ex rel. v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

To satisfy the heightened particularity requirement of Rule 9(b), the plaintiff must allege such facts as the time, place, and content of the defendant's false representations, in addition to details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. *St. Luke's Hosp., Inc.*, 441 F.3d

at 556.  To ensure the complaint contains the who, what, where, and when of the alleged fraud, the plaintiff is required to "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Ackerman*, 172 F.3d at 469-70; *St. Luke's Hosp., Inc.*, 441 F.3d at 556; *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy Rule 9(b)."  *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002) (*quoting Commercial Property Invs. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995).

### C.   RICO

RICO, 18 U.S.C. § 1961 *et seq.*, prohibits certain conduct involving a pattern of racketeering activity.  *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1994 (2006). RICO allows for a private right of action by any person injured in his or her business or property by reason of a violation of RICO's substantive restrictions.  *Id.*  Congress enacted RICO in an effort to eliminate organized, long-term, habitual criminal behavior.  *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).  To prove a RICO claim, a plaintiff must have "1) sustained an injury to business or property 2) that was caused by a RICO violation." *Asa-Brandt, Inc. v. ADM Investor Servs.*, 344 F.3d 738, 752 (8th Cir. 2003).  Furthermore, a RICO plaintiff must establish the defendant "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.* (*quoting Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997)).

In proving the existence of an enterprise, the enterprise "must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from

the pattern of racketeering." *Id.* The requirement of a distinct structure mandates that the "common activities of the enterprise extend beyond the minimal association necessary to sustain the pattern of racketeering." *McDonough v. National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997). A pattern of racketeering activity must involve predicate acts linked by both relatedness and continuity. *Handeen v. Lemaire*, 112 F.3d 1339, 1353 (8th Cir. 1997). Whether a pattern of racketeering activity exists is a factual determination. *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 980 (8th Cir. 1991).

Where a fraudulent scheme inflicts or threatens only a single injury, it is unlikely Congress intended to make the availability of treble damages and augmented criminal sanctions dependent on whether the scheme enjoyed immediate success or took a period of time to meet with success. *Terry A. Lambert Plumbing, Inc.*, 934 F.2d 976, 980 (8th Cir. 1991) (*quoting Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 597 (3rd Cir. 1990)) (noting that "[v]irtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and are spread over a period of at least several months"). Given the pattern element in the RICO statute, it is unlikely Congress intended RICO to apply in situations where a significant social threat does not exist. *Id*. "That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity." *McDonough v. National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997). Generally, a single entity "cannot simultaneously constitute the enterprise necessary for a violation of a certain RICO provision and the person committing the violation." 77 C.J.S. RICO § 24 (2006).

**Analysis**

The plaintiffs have failed to plead the specific activities required under 18 U.S.C. § 1962, failed to plead the requisite two predicate acts, and failed to adequately plead the enterprise requirement. The alleged predicate acts are the defendants' use of the mails and telephone to defraud. Viewing the complaint in the light most favorable to the plaintiff, this case involves, at most, a group of anesthesiologists who planned to defraud their employer, ACN, and its president Koning, in connection with a single contract. As noted above, a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim. Further, the court finds the plaintiffs have failed to adequately allege a pattern of racketeering under 18 U.S.C. § 1962, have failed to properly plead the specific activities required to support a racketeering claim, and have failed to demonstrate continued racketeering activity. Consequently, the court will grant the motion to dismiss Claim III, the RICO cause of action, against plaintiff ACN and plaintiff Koning. The plaintiff has requested leave to amend. The court will grant this request, although the court is very doubtful that the plaintiffs can adequately plead a RICO claim based on the facts that have been presented in this case.

ACCORDINGLY, IT IS ORDERED:

1. Defendants' motions to dismiss, Filing Nos. 5 & 11, are granted.

2. Plaintiffs' First Amended Complaint Claim III, civil racketeering (RICO) (by all plaintiffs against all defendants), is dismissed without prejudice.

3. Plaintiffs shall have fourteen (14) days from the date of this order to amend its complaint, if it so chooses, to fulfill the pleading requirements of a RICO claim. Defendants

shall have twenty (20) days from the date of this order or from the date of the new amended complaint, whichever occurs first, to file an appropriate motion or answer.

DATED this 29th day of December, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge